IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.        ) | Crim. No. 11-106 (PLF) |
| ) | |
| ALI MOHAMED ALI, ) | |
| ) | |
| Defendant.    ) | |
| ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING
THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER
AND IN OPPOSITION TO THE PROPOSED ORDER**

Defendant Ali Mohamed Ali, by and through undersigned counsel, respectfully submits the following Supplemental Memorandum of Points and Authorities regarding the Government's Motion for a Protective Order and in Opposition to the Proposed Order.

**BACKGROUND**

The government has moved for a protective order pursuant to Fed. R. Crim. P. 16(d) and Section 3 of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III (1980), and has submitted a proposed order. [Dkt. 25]. Defendant Ali filed an opposition objecting to several provisions of the proposed order, particularly its mandatory clearance requirement (¶ 11) and categorical denial of access to classified documents by the defendant (¶18). [Dkt. 27]. In lieu of a categorical denial of access to classified information, Ali proposed that the Court enter a protective order restricting his access to classified information generally, but allowing access to specific information on defense counsel's motion and with an opportunity for the government to be heard. At a hearing on August 8, 2011, the Court directed the parties to file supplemental pleadings addressing three specific questions that arose in the context of these

disputes: (1) whether the term "defendant" as used in Classified Information Procedures Act ("CIPA") applies to defense counsel; (2) whether a defendant may be categorically denied access to classified information; and (3) whether a non-cleared defendant may be denied access to classified information presented to a jury. The Court also invited any additional authority counsel may have concerning the remaining issues of dispute. Accordingly, Ali respectfully submits this supplemental memorandum addressing the Court's questions and providing additional authority for Ali's proposed modifications.

I. THE LEGISLATIVE HISTORY OF CIPA REFLECTS A LIMITED MEANING TO THE TERM "DEFENDANT."

The legislative history of CIPA indicates that the term "defendant" was intended to mean "defendant." In the Senate Report accompanying CIPA, Congress made clear that it could, if it wished, distinguish between "defendant" and defendant's attorneys. The Report, discussing CIPA's Section 3, explained that "an order protecting material given defendant under Rule 16 (of 'Brady' materials) can forbid disclosure by a defendant or <u>an attorney</u> . . . ." S. Rep. No. 96-823, 6, 1980 WL 12985, at *5 (1980) (emphasis added); <u>see also id</u>. at 7, 1980 WL 12985, at *6 (Section 6 "establishes a procedure for a hearing often in camera, with both the prosecution and <u>the defense</u> present.") (emphasis added).

It does seem clear that Congress understood that once—after following the CIPA procedures—the Court determined that disclosure of classified information to the defendant was necessary, defendant's counsel would also gain access to those materials. We can find no support, however, for the Government's proposition that after CIPA requires disclosure to the "defendant," the Government may restrict access only to his counsel.

II.  **NO AUTHORITY HAS BEEN FOUND FOR A CATEGORICAL DENIAL OF A DEFENDANT FROM ACCESSING CLASSIFIED INFORMATION AS SPECIFIED IN ¶ 18 OF THE PROPOSED ORDER.**

After reviewing numerous cases involving the most demanding applications of CIPA, including cases involving al Qaeda operatives and Guantanamo detainees, Defendant has been unable to uncover any support for a categorical prohibition against access to classified information such as the one proposed by the government. See Gov't Proposed Order at 9, ¶18 ("The Court finds that in the interest of national security, the defendant shall not have any access to classified [sic] information."). Defendant has already cited one authority in this District rejecting a categorical bar such as the one proposed by the government, and endorsing a provision allowing the defendant to access classified material upon motion by counsel with an opportunity to be heard. See U.S. v. Rezaq, 156 F.R.D. 514, 527 (D.D.C. 1994) (stating that the government went "too far in requesting a categorical bar against [defendant's] review of the CIPA material" and issuing protective order with specific provision providing for defendant's access to classified information upon counsel's motion.). Numerous other cases support this approach.

For example, in In re Guantanamo Bay Detainee Litig., 634 F. Supp. 2d 17, 22 (D.D.C. 2009), the government sought to withhold statements of the petitioners designated classified or protected. Instead, the government proposed limiting access to the statements to cleared counsel. Relying on Boumediene v. Bush, 553 U.S. 723, 783 (2008), the Court rejected the government's position, stating that "[c]ounsel…cannot be expected to rebut allegations stemming from those statements without the assistance of the petitioner himself." Id. Summarizing its findings under the protective order, the Court stated:

> Drawing from recent case law and relevant criminal statutes, the Court finds that a district court may order the disclosure of classified information over the government's objection, if certain conditions are met. The district court would first determine if the

> information is material and would help facilitate meaningful habeas review. If the answer is affirmative to both questions, the court may order the disclosure of the classified information. If the government still objects to the disclosure of the classified information, it must provide a sufficient alternative to the information. If the government fails to provide such an alternative, the court may order an assortment of remedies.

Id. at 23-24. Notably, although the case involved a habeas review, the Court employed the same "material and helpful" standard endorsed by the D.C. Circuit in the CIPA context. See United States v. Mejia, 448 F.3d 436, 455-56 (D.C. Cir. 2006).

Similarly, the protective order in United States v. Moussaoui, 591 F.3d 263, 283 (4th Cir. 2010), reflected the position advocated by Ali. While generally preventing defense counsel from "'disclos[ing] such [classified] information or documents to [Moussaoui] without prior concurrence of counsel for the government, or, absent such concurrence, prior approval of the Court,'" the protective order provided that "Moussaoui would be given personal access to classified information 'if such access should be determined by the Court to be necessary.'" Id. (quoting protective order).

And the protective order in United States v. Chalmers, 2007 WL 591948 (S.D.N.Y. Feb. 27, 2007), was even more permissive. It allowed the defendants to access classified material generally, restricting "only classified information the Government reasonably and in good faith believes will present a national security risk if disclosed to defendants." Id. And it subjected even that restriction to the caveat that defense counsel may move for leave from the Court to share the information with the defendants.

In sum, the standard in cases involving classified information either reflects Defendant's proposed modification, or exceeds it in the access allowed to defendant.

### III.  THE CONFRONTATION CLAUSE PROHIBITS DENYING A DEFENDANT ACCESS TO MATERIALS PRESENTED TO THE JURY.

At the August 8 hearing, defense counsel asserted that one the main cases relied upon by the Government held that the Confrontation Clause required the Government to disclose to the Defendant all classified evidence that it presented to the jury. Defense counsel mistakenly identified United States v. Moussaoui, 591 F.3d 263 (4th Cir. 2010), as amended (Feb. 9, 2011), as the relevant case. The appropriate citation was to United States v. Abu Ali, 528 F.3d 210, 255 (4th Cir. 2008):

> If classified information is to be relied upon as evidence of guilt, the district court may consider steps to protect some or all of the information from unnecessary public disclosure in the interest of national security and in accordance with CIPA, which specifically contemplates such methods as redactions and substitutions so long as these alternatives do not deprive the defendant of a fair trial. However, the government must at a minimum provide the same version of the evidence to the defendant that is submitted to the jury. We do not balance a criminal defendant's right to see the evidence which will be used to convict him against the government's interest in protecting that evidence from public disclosure. If the government does not want the defendant to be privy to information that is classified, it may either declassify the document, seek approval of an effective substitute, or forego its use altogether. What the government cannot do is hide the evidence from the defendant, but give it to the jury. Such plainly violates the Confrontation Clause.

**IV.   NOTABLE SUPPLEMENTAL AUTHORITY SUPPORTS ALI'S POSITION THAT CIPA DOES NOT MANDATE SECURITY CLEARANCES FOR DEFENSE COUNSEL.**

CIPA's Security Procedures[1] were promulgated by Chief Justice Burger pursuant to a grant of authority under Section 9 of CIPA. The Security Procedures include provisions pertaining to "Court Personnel" (§ 4), "Persons Acting For the Defendant" (§ 5), and "Jury" (§ 6). Certain statements by the Chief Justice regarding these provisions included in letters to congressional leaders have been preserved and cited as authority by the Second Circuit and the Southern District of New York. See United States v. Bin Laden, 58 F.Supp. 2d 113, 117 (S.D.N.Y. 1999), aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa, 552

---

[1] Security Procedures Established Pursuant to Public Law 96-456, 94 Stat.2025, By the Chief Justice of the United States for the Protection of Classified Information, at ¶ 5 (hereinafter "Security Procedures").

F.3d 93, 121 (2d Cir. 2008) ("In re Terrorist Bombings").  In these letters, the Chief Justice unequivocally affirms the discretion of the trial court to determine counsel's access to classified materials, unfettered by any requirement for a security clearance.  The Chief Justice wrote that Section 5 of the Security Procedures "does not 'require defense personnel to obtain security clearances.'"  Bin Laden, 58 F.Supp. 2d at 117 (quoting Background Material for Chairman Boland and Chairman Rodino on the Security Procedures for the Protection of Classified Information in the Custody of the Federal Courts, at 2, appended to Letter from Chief Justice Warren E. Burger to Rep. Peter W. Rodino (July 10, 1981) ( hereinafter "Memo to Boland and Rodino")).  He continued:

> [A]n inquiry concerning defense personnel obviously may be appropriate in some cases…Section 5 does not attempt to define the range of inquiry that may be necessary. . . . The trial judge, and the trial judge alone, in other words, decides what classified information the defendant is entitled to receive from the government and what provisions are to be included in a protective order. . . . In each instance, the trial court judge is free to make whatever decision he wishes to make with regard to defense access to classified information, and the rules in no way interfere with the judge's discretion in this regard.

Id. at 117-118 (quoting Memo to Boland and Rodino at 2, 5).  Moreover, "'in the exercise of its discretion,'" according to Chief Justice Burger, "the Court, rather than the court security officer, should 'determine who may have access to classified materials' and 'under what conditions the materials may be reviewed.'"  Id. at 118 (quoting Background Material for Chairman Edwards on the Security Procedures for the Protection of Classified Information in the Custody of the Federal Courts, at 3, appended to Letter from Chief Justice Burger to Rep. Peter W. Rodino (July 10, 1981) (hereinafter "Memo to Edwards").

The Bin Laden court found Chief Justice Burger's commentary on the Security Procedures he promulgated to be conclusive, and affirmed that "neither Congress nor the Chief Justice sought to impose a mandatory clearance requirement in all cases involving classified

information . . . ."  Bin Laden, 58 F. Supp. 2d at 117.  Rather, the court concluded, "CIPA and the accompanying Security Procedures create a system by which the trial court has wide latitude to impose reasonable restrictions likely to prevent the unauthorized disclosure of classified information."  Id.; see also In re Terrorist Bombings, 552 F.3d at 122 ("CIPA leaves the precise conditions under which the defense may obtain access to discoverable information to the informed discretion of the district court.").

Exercising this latitude, the Bin Laden court determined that a general security clearance requirement was appropriate in light of the "exceptional facts" of the case, including the fact that the defendants were part of an ongoing terrorist conspiracy whose members had previously "gained access to unfiled court documents and forwarded those documents to other members of the conspiracy."  Bin Laden, 58 F. Supp. 2d at 121.  However, the court emphasized—even in those extraordinary circumstances—that:

> [t]he Court will of course remain the ultimate arbiter of disputes surrounding the security clearance applications and will be available to insure both proper respect for counsels' confidentiality and that no applications are denied for improper reasons.  See, e.g., United States v. Musa, 833 F.Supp. 752, 756-57 (E.D. Mo. 1993) (stating that if "the CSO should determine that any person should not obtain a security clearance," the Court will "conduct an ex parte hearing to determine" that person's eligibility to see classified materials, that "[o]nly the CSO and defense counsel will be heard on this issue," and that "the prosecution will not be notified of the hearing or allowed to participate in it").

Bin Laden, 58 F. Supp. 2d at 120-21.  In so holding, the court kept faith with Chief Justice Burger's intention that "the Court in the exercise of its discretion, rather than the court security officer, should 'determine who may have access to classified materials.'"  Bin Laden, 58 F.Supp. 2d at 118 (quoting Memo to Edwards, at 3).

Musa, cited approvingly by Bin Laden, exemplifies a similarly faithful approach to Section 5 in a case lacking Bin Laden's "exceptional circumstances" and "heightened" concerns.  In Musa, the government did not oppose providing uncleared defense counsel with

access to classified materials.  The court agreed, noting that defense counsel "come within the inherent supervisory authority of the Court" and would doubtlessly "take their duties as counsel very seriously."  <u>Musa</u>, 833 F. Supp. at 755-56.  The court required a security clearance for witnesses, secretaries, and translators, however, noting that such persons "have not been licensed by this Court and the State of Missouri, and are not necessarily bound by the same ethical considerations that bind counsel."  <u>Id</u>.

In light of Chief Justice Burger's unequivocal statements regarding the meaning of the Security Procedures, as affirmed by the Second Circuit, it seems clear that lack of an Executive security clearance poses no categorical bar to defense counsel's access to classified material to which the defendant is entitled under background principles of criminal discovery.  Rather, such a clearance is mandatory only when counsel seeks access to classified materials during the early stages of CIPA hearings before their discoverability has been definitively assessed by the Court.  <u>See</u>, <u>e.g.</u>, <u>United States v. Abu Ali</u>, 528 F.3d 210, 254 (uncleared defendant and counsel must be excluded from hearings assessing materiality of classified materials).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the government's Motion for a Protective Order be denied, and that any protective order issued pursuant to CIPA in this case reflect the modifications proposed by Defendant.

August 15, 2011

Respectfully submitted,

/s/ Matthew J. Peed
Matthew J. Peed (D.C. Bar no. 503328)

CLINTON & PEED PLLC
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(202) 618-1628 (tel)
(202) 204-6320 (fax)
Matt@ClintonPeed.com