**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ALI MOHAMED ALI,** | : | **CRIMINAL NO. 11-106 (PLF)** |
| **also known as Ismail Ali,** | : | |
| **also known as Ahmed Ali Adan,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENTAL BRIEF IN SUPPORT OF**
**GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER UNDER CIPA**

At the status hearing on August 8, 2011, the Court requested briefing on three issues:

first, the meaning of the term "defendant" as used in Classified Information Procedures Act

("CIPA"); second, whether there have been cases in which a defendant has been denied access

to classified information; and third, whether there have been cases in which a trial jury has been

provided access to classified information, and if so, whether the jury received classified

information that was withheld from the defendant. The government respectfully submits its

response to each of these issues in the sections below.

**I.  THE INTERPRETATION OF THE TERM "DEFENDANT," AS USED IN CIPA**

**A.  The Legislative History of CIPA Provides Some Guidance**

CIPA uses the term "defendant" but neither defines that term nor makes any reference to

"defense counsel."  The legislative history of CIPA does not fully address the interpretation of

the term "defendant," as used in CIPA.  It does, however, reflect Congressional intent to include

defense counsel within the meaning of the term.

The Senate Report that accompanied CIPA demonstrates that Congress intended to authorize

the regulation of disclosure of classified information to defense counsel, as well as the

defendant**,** under Section 3 of CIPA.  In discussing Section 3 of CIPA, the Report explained that "an order protecting material given [the] defendant . . . <u>can forbid disclosure by a defendant or an attorney in any context.</u>"  S. Rep. No. 96-823, at 6 (1980) (emphasis added).  Thus, in referring to material "given [the] defendant," the Senate Report contemplated that protective orders issued pursuant to Section 3 of CIPA would regulate information given to defense counsel.  If the term, "defendant," as it appears in CIPA were interpreted to apply only to the defendant him or herself, then such interpretation would restrict a court's ability to fashion an appropriate protective order and would be contrary to the statement in the Senate Report concerning the scope of a court's authority under CIPA to forbid disclosure by defense counsel.

The legislative history also demonstrates that a narrow interpretation of the term "defendant" to exclude defense counsel would be inconsistent with the intent and structure of CIPA.  Section 5 of CIPA imposes a notice requirement upon the defense which is intended to "forbid disclosure of classified information in the context of trial or pre-trial proceedings until notice has been given and the government has been afforded an opportunity to avail itself of the procedures of this Act [CIPA]."  S. Rep. No. 96-823, at 7 (1980).  If, after filing a motion under Section 6(a) and attempting to avail itself of various alternative mechanisms of disclosure, the court determines that classified information is admissible, the government has an opportunity to decide whether to disclose that information to uncleared persons or drop the charges.  <u>See</u> 96 Cong. Rec. 14078-79 (Oct. 1, 1980) (statement of Sen. Biden) (discussing procedures established by CIPA); 96 Cong. Rec. H10316 (Oct. 2, 1980) (statement of Rep. Mazzoli) (CIPA is "intended to insure that classified information that is relevant to the defendant's case will be identified prior to trial, before it is publicly available, so that the Government can make an informed decision in

determining whether or not the benefits of prosecution will outweigh the harm stemming from public disclosure").

 A narrow, literal interpretation of the term "defendant" would undermine CIPA by circumventing the procedures established in Sections 5 and 6 of CIPA.  CIPA was initially adopted to prevent "graymail" which, in general terms, is the "potential of unauthorized disclosure of classified information . . . threatening our national security" in the course of a criminal prosecution.  See 96 Cong. Rec. H10316 (Oct. 2, 1980) (statement of Rep. McClory).  Providing classified information to a defendant in a criminal case who is an uncleared foreign national would constitute the very sort of disclosure that CIPA was intended to avoid.  This is not to say that a defendant could never gain access to such information.  A protective order can include a process for obtaining court approval for the sharing of classified information under the appropriate circumstances, as the government's proposed protective order does.  See Paragraph 18(f) of the Proposed Protective Order.

   **B.**  **Caselaw Supports a Broad Interpretation of the Term "Defendant" in the Context of CIPA**

The government's survey of relevant caselaw failed to uncover any opinion explicitly interpreting the term "defendant" under CIPA.  Nonetheless, a number of courts have upheld protective orders, issued pursuant to Section 3 of CIPA, which presume that access to classified information would be granted to the defense only upon obtaining an appropriate security clearance.  In each of the cases, that limitation effectively provided cleared defense counsel access to the classified information while denying the uncleared defendant personal access.  Following review by cleared counsel, the orders provided an opportunity for the defendant to gain personal access to the information, or a suitable alternative, upon approval by the court.  This process reflects that courts have interpreted the term "defendant" under CIPA to encompass

defense counsel as well as a defendant him or herself.  See United States v. Moussaoui, 591 F.3d

263, 283 (4th Cir. 2010), as amended (Feb. 9, 2011); United States v. Subasic, 5:09-CR-216-FL-

3, 2011 WL 1930628 (E.D.N.C. May 19, 2011); United States v. Holy Land Foundation for

Relief & Dev., CR.A.304CR240-G, 2007 WL 628059 (N.D. Tex. Feb. 27, 2007); United States

v. Chalmers, S5 05 CR.59 DC, 2007 WL 591948 (S.D.N.Y. Feb. 27, 2007); United States v. Bin

Laden, S(7) 98 CR. 1023 LBS, 2001 WL 66393 (S.D.N.Y. 2001), aff'd sub nom. In re Terrorist

Bombings of U.S. Embassies in East Africa, 552 F.3d 93 (2d Cir. 2008)(unreported), rehearing

denied in part, 553 F.3d 150 (2d Cir. 2009), cert. denied, 129 S.Ct. 2778 (2009); United States v.

Rezaq, 156 F.R.D. 514 (D.D.C. 1994), modified upon reconsideration, 899 F. Supp. 697 (D.D.C.

1995).

## II.  LIMITATIONS ON DEFENDANT'S PERSONAL DISCOVERY OF CLASSIFIED INFORMATION

Numerous courts have limited the discovery of classified information, pursuant to

protective orders entered under CIPA, to cleared defense counsel but not the defendant.[1]   Courts

have included in such protective orders the opportunity for defense counsel to seek permission

from the Court to share classified information with the defendant him or herself, however, upon

a sufficient showing of need to do so.

In United States v. Rezaq, the district court ruled that "[a]ll classified material contained

in the discovery granted pursuant to defendant's motion to compel shall be disclosed only to

defendant's counsel, not to defendant himself, unless this court exempts specific evidence from

this bar in the future." 156 F.R.D. 514 (D.D.C. 1994)(emphasis added).  The court emphasized

that "Rule 16(d)(1) of the Federal Rules of Criminal Procedure and Section 3 of CIPA both

---

[1]  The Court specifically inquired whether Wesam Al Delaema had received access to any
classified information. United States v. Delaema, 1:05-CR-00377(PLF).  Although there were
CIPA proceedings, no classified material was produced either to the defendant or his counsel.

authorize [the] court to issue protective orders of this kind to prevent disclosure of sensitive

information that could compromise national security." Id.[2]  To the extent the defendant required

personal access to classified information for preparation of his defense, the court noted that

under the protective order, "defendant's counsel may seek the court's permission to disclose

certain evidence to defendant, and the United States may oppose such disclosure." Id.

     In United States v. Subasic, the court considered motions from an uncleared *pro se*

defendant who sought personal access to classified information. 2011 WL 1930628, at *1.  The

court found that the defendant was not, by default, entitled to personally review classified

information. Id. at *2.  Rather, standby counsel, who possessed an appropriate clearance, was

permitted to review classified discovery and file a classified brief concerning whether the

defendant's personal access under Section 5 of CIPA was necessary because: (1) the classified

information was material to the defense; and (2) no substitution of the classified material was

sufficient under Section 6 of CIPA.  Id. ("Defendant will be given access to the classified

information itself only if it is material to his defense and no substitution can be crafted."); see

also 18 U.S.C. App. 3 § 6(c) (providing alternative procedures for the disclosure of classified

information following the court's determination concerning the use, relevance, or admissibility

of classified information).  Therefore, acting under CIPA, the court found that a defendant could

---

[2]  In fashioning the protective order to preclude the defendant from obtaining access to national
security information, now Chief Judge Lamberth observed, "There is no reason to think that
defendant can be entrusted with national secrets.  Mr. Rezaq has never had, nor is ever likely to
have, a security clearance.  Nor is there any reason to think that defendant could easily be
prevented from disseminating such secrets if he learned them, since English-speaking prison
officials would have difficulty monitoring telephone calls and mail in Mr. Rezaq's native
language.  Clearly, disclosing the sensitive evidence to Mr. Rezaq poses a risk to national
security."  156 F.R.D. at 524.

be denied personal access to classified information, at least until the court ruled favorably upon

the defendant's notice of intent to rely on classified information.

In United States v. Holy Land Foundation for Relief & Dev., the court was asked to

reconsider a motion by the defendants to declare CIPA unconstitutional as applied in that case.

2007 WL 628059, at *1.  Among other things, "the defendants argue[d] that the defendants

themselves need access to . . . classified intercepts in order to find exculpatory information."

The court rejected that argument:

> Although the defendants do not have personal access to classified information,
> they do have personal access to all the declassified summaries of the FISA
> intercepts and to the four lines of FISA intercepts that have been declassified in
> their entirety.  In addition, the defendants' attorneys have been granted security
> clearances, and they have access to all of the FISA intercepts the government has
> produced in this case.  Finally, the defendants now have personal access to the
> declassified transcripts of FISA intercepts that the government intends to use at
> trial.

Id. at *2 (emphasis added) (internal citations omitted).  The court further emphasized that,

pursuant to CIPA, it had promulgated alternative procedures by which the defendants could seek

personal access to the information.  See id. (stating that "[i]f the defendants need personal access

. . . . [they] should use the summaries of intercepts and other criteria . . . to identify potentially

relevant intercepts. . . . [and then] ask the government to review and declassify the intercepts

[they have] identified.").

In United States v. Chalmers, the government moved for entry of a protective order

pursuant to Section 3 of CIPA. 2007 WL 591948, at *1.  The defendant challenged paragraph 18

of the proposed order, which provided: "In the interest of national security, the defendants may

be excluded from access to certain classified information."  Id. at *2.  The order did, however,

allow the defendant to gain personal access through "prior concurrence of counsel for the

Government or, absent such concurrence, prior approval of the Court."  Id.  The defendant

alleged that such a scheme violated his rights under the Fifth and Sixth Amendments.  The court

rejected the challenge on three grounds: (1) the defendant lacked the requisite security clearance

to access the classified information at issue; (2) the limitation only applied to "classified

information the Government reasonably and in good faith believes will present a national

security risk if disclosed to defendants"; and (3) the protective order provided that, with leave of

the court, cleared defense counsel might disclose the information at issue to the defendant.  Id.

In United States v. Bin Laden, the court considered a defendant's motion to declare CIPA

unconstitutional.  In ruling on that motion, the Bin Laden court considered the CIPA protective

order issued in that case:

> The Court, in a Protective Order dated July 29, 1999 established at ¶ 5 that "[n]o
> defendant . . . shall have access to any classified information involved in this case
> unless that person shall first have: (a) received the necessary security clearance . .
> . ."  The Court adopted the Protective Order because of the serious risk that
> unauthorized disclosure of classified information would jeopardize the ongoing
> Government investigation into the activities of alleged associates of the
> Defendants.  The practical result of that order is that defense counsel have been
> cleared to review a category of classified documents that they may not share with
> their clients. (None of the defendants in the case has a security clearance.)

2001 WL 66393, at *2 (emphasis added). The court ultimately denied the motion, finding that

such limitations on personal access comported with the defendant's Fifth and Sixth Amendment

rights.

On appeal, the defendant again challenged the clearance requirement of the CIPA

protective order, alleging that it "placed off-limits to him 'important evidence which could not

adequately be interpreted by counsel alone.'" See In re Terrorist Bombings of U.S. Embassies in

East Africa, 552 F.3d 93.  As an initial matter, the Second Circuit rejected that argument because

"the government stipulated to all of the facts that . . . [the defendant] was seeking to establish

through use of the classified information."  Id. at 125.  The court further stated, however, that

even if the material had met the threshold of discoverability, the defendant would not be entitled

to personally review the material because his "interest . . . was insufficient to outweigh the

government's interest in avoiding unauthorized disclosures of classified information." Id. In

part, the Second Circuit based its decision on the fact that "three out of the four items to which

[the defendant] sought access were made available for the preparation of . . . [his] defense

through the production of classified documents to . . . [the defendant's] attorneys, who possessed

the security clearances necessary to review and inspect such material." Id. at 126.

In United States v. Moussaoui, the defendant challenged a CIPA protective order issued

by the court which limited his personal access to classified information. 2002 WL 1987964, at

*1. The court noted that the "January 22, 2002 Protective Order prohibited the defendant from

accessing classified information unless he first obtains the necessary security clearance." Id.

The district court rejected the defendant's challenge, finding that "the United States' interest in

protecting its national security information outweigh[ed] the defendant's desire to review the

classified discovery." Id. The court further held that, where standby counsel with an appropriate

clearance had reviewed the classified discovery, such a denial of personal access did not violate

the defendant's Fifth or Sixth Amendment rights. Id.

The defendant in Moussaoui ultimately entered a plea of guilty, which he subsequently

challenged, alleging that the district court erred in prohibiting uncleared persons from accessing

classified information. United States v. Moussaoui, 591 F.3d at 281. The Fourth Circuit

summarized the district court's protective order as follows:

> Under the Protective Order, classified information would be produced by the
> Government only to persons possessing the requisite security clearance, a
> category that included [the defendant's] appointed counsel but excluded [the
> defendant]. All other "person[s] whose assistance the defense reasonably
> require[d] [could] only have access to classified information . . . after obtaining
> from the Court—with prior notice to the government—an approval for access to

the appropriate level of classification on a need to know basis." <u>Defense counsel</u>
<u>were also prohibited from "disclos[ing] such information or documents to [the</u>
<u>defendant] without prior concurrence of counsel for the government, or, absent</u>
<u>such concurrence, prior approval of the Court.</u>

<u>Id.</u> at 283 (internal citations omitted) (emphasis added).  "[T]he effect of the Protective Order

was that . . . [the defendant's] counsel would have access to classified information produced

under Section 4 of CIPA, but could not show or discuss the contents of the classified material

with [the defendant who] . . . would not be granted the necessary clearance." <u>Id.</u>  The court

emphasized, however, that the protective order did not preclude the defendant "from <u>ever</u> having

access to material or exculpatory evidence," but rather would permit "personal access to

classified information 'if such access should be determined by the Court to be necessary.'"  <u>Id.</u>

(emphasis in original).  After considering the defendant's challenge to that CIPA protective

order on various grounds, the Fourth Circuit held that such limitations did not constitute a

constructive denial of the defendant's right to counsel. <u>See also</u> <u>United States v. Abu Ali</u>, 528

F.3d 210 (4th Cir. 2008)(court denied both uncleared defendant and his uncleared counsel access

to classified information, limiting access to a court-appointed surrogate attorney with the

necessary clearance).

### III.  ACCESS TO CLASSIFIED INFORMATION BY MEMBERS OF THE JURY

Research has disclosed instances in which classified information has been given to

members of the trial jury without jurors obtaining security clearances.  This situation has risen

most commonly in espionage prosecutions where national defense information is in question.[3]

<u>United States v. Rosen</u>, 599 F.Supp.2d 690 (E.D. Va. 2009) (prosecution for communicating

national defense information to those not entitled to receive it).  There have been situations in

which the government has presented classified information to prove violations of the law.  The

---

[3] National defense information is not synomous with "classified" information.

Supreme Court has held that "[t]he question of the connection of the information with national

defense is a question of fact to be determined by the jury . . . ." Gorin v. United States, 312 U.S.

19, 32 (1941).   Thus, the jury must be provided with the classified information at issue in order

to return a verdict on the pending charge.   In such cases, the defendant has also had access to

such classified information.

Three cases exemplify this point.[4]  First, in United States v. Regan, the defendant, who

had held a top-secret security clearance, was charged with violating 18 U.S.C. § 794(a).  221 F.

Supp. 2d 672, 675 (E.D. Va. 2002).  The charge arose from the defendant accessing and viewing

classified information relating to U.S. military facilities overseas, as well as classified

documents relating to U.S. intelligence collection capabilities.  Id.  Similarly, in United States v.

Whitworth, the defendant, who had held a top-secret security clearance, was charged with six

counts of violating § 794(a) based on his copying, photographing, and transmitting classified

information to a foreign intelligence service.  856 F.2d 1268, 1271-72, 1275 (9th Cir. 1987).

Finally, in United States v. Squillacote, two defendants were charged with violating § 794(a) as a

result of one defendant, who held a security clearance, having attempted to provide a foreign

intelligence agent with documents classified at the "secret" level.  221 F.3d 542, 548-52 (4th Cir.

2000).

The circumstances of, and charges against, defendant Ali are clearly distinguishable from

the three aforementioned cases.  First, in the context of espionage, the defendant has typically

held a security clearance and therefore already had access to the classified information that was

to be admitted at trial.  Personal access for the defendant, therefore, was of lesser concern to the

_____

[4] Consultation within the Department of Justice has confirmed that, with respect to each of these three cases, classified information was disclosed to the jury and the defendant during the course of the proceedings.

government.  Defendant Ali, on the other hand, is an uncleared foreign national who has never

been provided access to classified information.  Second, in the context of espionage, admission

of classified information may be necessary for the government to establish an element of the

offense with which the defendant is charged.  The jury, therefore, must be presented with the

classified information and, as a result, the defendant will gain personal access to that

information.  The crimes with which defendant Ali are charged do not, however, require the

government to introduce classified information to prove his guilt.[5]

While the government does not currently envision relying upon the introduction of any

classified material at trial, if the government were ultimately to decide that classified information

would need to be presented to the jury, the defendant would receive the same information in the

same form as provided to the jury.  United States v. Abu Ali, 528 F.3d at 254-55(violation of the

Confrontation Clause where defendant was provided redacted version of classified

communications but jury was presented with the complete, unredacted version).  As Abu Ali

highlights, however, such a disclosure should only occur after the parties have fully availed

themselves of the procedures under CIPA.[6]

---

[5] Defendant Ali has been charged with: (1) Conspiracy to Commit Piracy under the Law of
Nations, 18 U.S.C. § 371; (2) Piracy under the Law of Nations, 18 U.S.C. § 1651; (3) Attack to
Plunder Vessel, 18 U.S.C. § 1659; (4) Hostage Taking, 18 U.S.C. § 1203; and (5) Aiding and
Abetting and Causing an Act to be Done, 18 U.S.C. § 2.

[6] The CIPA procedure, where the defendant seeks to introduce classified material at trial,
explained by the Fourth Circuit in Abu Ali, entails no less than a five-step process: (1) pursuant
to Section 5 of CIPA, the defendant "notif[ies] the government's attorney and the court in
writing of any intention to disclose such information . . . ."; (2) upon the government's Section 6
motion, "the district court considers the government's objections to 'the use, relevance, or
admissibility of classified information'"; (3) "the district court determines, in the exercise of its
discretion, that an item of classified information is relevant and material to the defense"; (4)
upon making that determination, the court considers the use of substitutions authorized under
Section 6(c); and (5) in accordance with Section 8(b), the court considers procedures for the
introduction of classified information that might "'prevent unnecessary disclosure of classified
information' . . . ." 528 F.3d at 246-48.

Moreover, as the Fourth Circuit observed, in <u>Abu Ali</u>, <u>supra</u>, "[a] defendant's right to see the evidence tendered against him *during* trial ... does not necessarily equate to a right to have classified information disclosed to him *prior* to trial." <u>Id.</u> at 245.  At this juncture, the government submits that the draft protective order properly balances the interests of the United States and the defendant by restricting the disclosure and access of classified information that may be at issue in this case to individuals with the appropriate security clearance and the need to know the information.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court enter the proposed CIPA Protective Order submitted by the government.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar Number 447889

By:        _____/s/_____

Brenda J. Johnson
Assistant United States Attorney
D.C. Bar No. 370737
202/252-7801
Brenda.Johnson@usdoj.gov
National Security Section
555 4th Street, N.W. – 11th Floor
Washington, D.C.  20530

_____/s/_____

Jennifer E. Levy
Trial Attorney
U.S. Department of Justice
D.C. Bar No. 291070
202/514-1092
Jennifer.E.Levy@usdoj.gov
National Security Division
Counterterrorism Section
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530