# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

v.

**ALI MOHAMED ALI,**

*Defendant*.

**Criminal No. 11-0106**

## MEMORANDUM OPINION

On October 2, 2013, the Court ordered defendant Ali to "file a memorandum of law addressing whether piracy under 18 U.S.C. § 1651 is a continuing offense, such that defendant could be found guilty for aiding and abetting piracy assuming that no high seas piratical act by any principal occurred after defendant boarded the ship and began negotiating." (Order, Oct. 2, 2013 [Dkt. No. 322].) On October 28, 2013, having considered defendant's memorandum of law, the government's response, and defendant's reply, the Court concluded that piracy is "an offense that can continue once pirates have left the high seas, such that a defendant may aid and abet piracy even if no high-seas conduct occurred during or after his allegedly facilitative actions." (Order, Oct. 28, 2013 [Dkt. No. 338] at 2.) This Memorandum Opinion explains that conclusion.

## LEGAL STANDARD

"The notion of 'continuing offense' has traditionally identified a type of offense fundamentally different from most known to the common law." *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987). A typical criminal offense is completed once each element of the crime is satisfied. *Id.* For this reason, a defendant who intentionally aids a principal *after* all

1

elements of an offense are satisfied typically is not guilty of that offense under an aiding and abetting theory of liability. *See United States v. Barlow*, 470 F.2d 1245, 1249 (D.C. Cir. 1972) ("[W]here the defendant merely provided assistance to the perpetrator of the actual crime *after its completion* – and nothing more – a conviction for aiding and abetting the principal regarding that crime cannot stand.").

"A 'continuing offense,' in contrast, is an unlawful course of conduct that does perdure. As the Supreme Court has described the notion, 'the unlawful course of conduct is set on foot by a single impulse and operated by an intermittent force, until the ultimate illegal objective is finally attained.'" *McGoff*, 831 F.2d at 1078 (quoting *Toussie v. United States*, 397 U.S. 112, 136 (1970) (White, J., dissenting)). Thus, a defendant who intentionally aids a principal after all elements of a continuing offense are satisfied may be guilty of that offense under an aiding and abetting theory of liability if that offense is still continuing at the time of the defendant's facilitative acts. *See United States v. Seals*, 130 F.3d 451, 462 (D.C. Cir. 1997) ("[T]he crime of kidnapping *continues* while the victim remains held and a ransom sought. . . . Accordingly, there was sufficient evidence to convict Sweatt as at least an aider and abettor.").

The Supreme Court has instructed that an offense is deemed to be continuing only where either (1) "the explicit language of the substantive criminal statute compels such a conclusion" or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115. If a court determines that an offense is continuing, it must then determine how long it continues. *See McGoff*, 831 F.2d at 1081-82 (explaining that "the decisive question in resolving the statute-of-limitations issue is when the continuing offense terminates"). Both inquiries are exercises in statutory interpretation and therefore subject to the rule of lenity. *See Toussie*, 397 U.S. at 122-23; *McGoff*, 831 F.2d at 318.

Thus, any "'grievous ambiguity or uncertainty in the statute,'" *United States v. Burwell*, 690 F.3d 500, 515 (D.C. Cir. 2012) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)), must inure to the benefit of the defendant, as courts shall "not derive criminal outlawry from some ambiguous implication." *Toussie*, 397 U.S. at 122 (quoting *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 222 (1952)).

## ANALYSIS

Section 1651 of Title 18 of the United States Code states that "[w]hoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life." 18 U.S.C. § 1651. The U.N. Convention on the Law of the Sea ("UNCLOS") sets out the legal framework for "piracy as defined by the law of nations." *United States v. Ali*, 718 F.3d 929, 936-37 (D.C. Cir. 2013); *see also United States v. Dire*, 680 F.3d 446, 469 (4th Cir. 2012). Relevant to the Court's inquiry here, UNCLOS defines piracy as:

> (a) any illegal acts of violence or detention, or any act of depredation, committed for private ends by the crew or the passengers of a private ship . . . and directed:
>
> > (i) on the high seas, against another ship . . . or against persons or property on board such ship . . .;
> >
> > (ii) against a ship, . . . persons or property in a place outside the jurisdiction of any State;

UNCLOS art. 101(a), Dec. 10, 1982, 1833 U.N.T.S. 397, 436.

Both the "explicit language" of UNCLOS 101(a) and the "nature" of the crime of piracy compel the conclusion that piracy under the law of nations is a continuing offense. *See Toussie*, 397 U.S. at 115. UNCLOS does not limit piracy to discrete acts of violence and depredation, but extends the offense to acts of "detention" against a ship, or persons or property aboard that ship,

3

as well. With the inclusion of acts of "detention" as piratical acts, the crime of piracy under the law of nations "necessarily becomes a continuing one." *Cf. United States v. Garcia*, 854 F.2d 340, 343 (9th Cir. 1988) ("When the focus is shifted to the involuntary detention of the victim, the crime of kidnapping necessarily becomes a continuing one."). For this reason, Ali concedes, and the Court agrees, that piracy as defined in UNCLOS and incorporated in 18 U.S.C. § 1651 is a continuing offense that is not necessarily completed the moment a perpetrator seizes another's ship, or ceases attacking or plundering. (Def.'s Reply, Oct. 24, 2013 [Dkt. No. 334] at 4 n.5.) Ali nonetheless argues that "when high seas conduct has ceased, the crime of piracy necessarily ceases with it," and therefore, a defendant cannot be found guilty of aiding and abetting piracy based solely on intentional facilitative acts *after* the principals enter territorial waters. (*See* Def.'s Mem. of Law, Oct. 12, 2013 [Dkt. No. 325] at 5-6.)

The law of continuing offense does not, however, require that *all* elements of an offense be satisfied for that offense to continue. Instead, a continuing offense continues "'until the ultimate illegal objective is finally attained.'" *See McGoff*, 831 F.2d at 1078 (quoting *Toussie*, 397 U.S. at 136). For this reason, the crime of robbery continues beyond a perpetrator's initial asportation with the property of another to the point in time when the perpetrator "has won his way to a place of temporary safety." *See United States v. Figueroa-Cartagena*, 612 F.3d 69, 79 (1st Cir. 2010) (internal quotation marks omitted) (collecting cases); *id.* ("[E]scape is 'inherent' to the crime of robbery."); *see also Barlow*, 470 F.2d at 1253. The "ultimate illegal objective" principle applies to crimes with geographical elements as well. For instance, the federal crime of kidnapping under 18 U.S.C. § 1201(a) is not completed once a perpetrator crosses a state or federal border, but continues so long as "the victim remains held and a ransom sought." *Seals*,

4

130 F.3d at 462; *see also* 18 U.S.C. § 1201(a) (criminalizing the unlawful detention of another for "ransom or reward").

Piracy is no exception. The elements of the crime of piracy under the law of nations are satisfied once (1) the crew or passengers of a private ship (2) commit an illegal act of violence, detention, or depredation (3) on the high seas (4) against another ship or persons or property on board that ship (5) for private ends. *See* UNCLOS art. 101(a); *see also United States v. Hasan*, 747 F. Supp. 2d 599, 640-41 (E.D. Va. 2010). While high-seas conduct is what makes piracy a universal crime, *see Ali* 718 F.3d at 935, high-seas conduct is *not* the pirates' "ultimate illegal objective." Instead, much like kidnappers, pirates' "ultimate illegal objective" is the use of "illegal acts of violence or detention, or . . . depredation . . . for private ends." UNCLOS art. 101(a).[1] Therefore, so long as the illegal acts of violence, detention, or depredation for private ends continue, the offense of piracy continues even after the perpetrators leave the high seas.[2] And so long as the offense of piracy continues, a defendant can be convicted of aiding and abetting piracy even if he facilitates only non-high-seas acts of the principals.

This conclusion is consistent with the D.C. Circuit's opinion in this case. As Ali notes, the Court of Appeals was not presented with this precise question on appeal, nor would the facts as represented by the government have given the appellate panel cause to have considered the

---

[1] Ali argues that if any crime is analogous to kidnapping, it is hostage taking. (Def.'s Reply at 10.) However, the fact that kidnapping may be *more* analogous to hostage taking than it is to piracy does not undermine the fact that kidnapping (with its ultimate objective of unlawful detention for ransom) *is* analogous to piracy (with its ultimate objective of unlawful violence, detention, or depredation for private ends).

[2] Accepting Ali's argument that the offense of piracy is complete when the perpetrators enter territorial waters would subject perpetrators who seize another ship and detain its crew to prosecution for *distinct* instances of piracy *each time* the ship leaves and then reenters the high seas.

5

issue *sua sponte*. (*See* Def.'s Reply at 1-2.) Nonetheless, the appellate opinion strongly suggests that the Court of Appeals would agree with this Court's analysis. In holding that neither international law nor 18 U.S.C. § 1651 requires that an aider and abettor's facilitative acts take place on the high seas, the Court of Appeals emphasized that "extending aider and abettor liability to those who facilitate [piratical] conduct furthers the goal of deterring piracy on the high seas – even when the facilitator stays close to shore." *Ali*, 718 F.3d at 940. To effectively reach those facilitators that stay "close to shore," Congress "must assuredly have intended that [piracy under 18 U.S.C. § 1651] be treated as a continuing one," *Toussie*, 397 U.S. at 136, lest the law only reach "those pirates desperate enough to do the dirty work but immunize" those persons that facilitate the pirates once they enter territorial waters to negotiate toward their private ends. *See Ali*, 718 F.3d at 940.

## CONCLUSION

For the foregoing reasons, the Court concludes that piracy under 18 U.S.C. § 1651 is an offense that continues beyond the high seas so long as the perpetrators continue to use "illegal acts of violence or detention, or . . . depredation . . . for private ends." UNCLOS art. 101(a). Accordingly, Ali may be convicted of aiding and abetting piracy if the government convinces the jury beyond a reasonable doubt that he intentionally facilitated the pirates aboard the *CEC Future* in their continued use of "illegal acts of violence or detention, or . . . depredation . . . for private ends," regardless of whether the continued "illegal acts" he facilitated occurred on the high seas.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 31, 2013

6